THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THOMAS J. CASTLE,<br><br>                         Plaintiff,<br><br>v.<br><br>DENIS MCDONOUGH, Secretary of the<br>United States Department of Veterans Affairs,<br><br>                         Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [16] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:20-cv-00039-DBB-CMR<br><br>District Judge David Barlow |

The matter before the court is Defendant's Motion for Summary Judgment against Plaintiff Thomas J. Castle ("Mr. Castle").[1] Mr. Castle alleges that his employer, the Salt Lake City Department of Veterans Affairs ("VA") Medical Center ("SLC VA") discriminated against him on the basis of his age and disability in the form of a constructive discharge.[2] After reviewing the parties' briefing and the record, the court finds that oral argument is unnecessary.[3] The court grants the VA's Motion for Summary Judgment.

## BACKGROUND

Mr. Castle worked for the SLC VA in Salt Lake City, Utah from November 2004 to September 2018 as a respiratory therapist.[4] Starting in 2014, the SLC VA imposed various disciplinary measures against Mr. Castle for allegations of inappropriate conduct.[5] The measures

---

[1] Def. Mot. for Summ. J., ECF No. 16, filed Mar. 24, 2022
[2] Compl. 4, ECF No. 3, filed Apr. 15, 2020.
[3] *See* DUCivR 7-1(g).
[4] Pl. Mem. in Opp'n to Def. Mot. for Summ. J. ("Opposition") 2–3, ECF No. 26, filed June 23, 2022.
[5] *Id.* at 8–9.

included mediation, verbal counseling, transfer, and suspensions.[6] Mr. Castle resigned on September 15, 2018 at age 61 after taking six weeks of medical leave to better manage his disabilities[7] and serving a two-week suspension.[8] Ten days later, Mr. Castle filed an Equal Employment Opportunity (EEOC) complaint against the SLC VA.[9] Mr. Castle alleged that he was discriminated against and subjected to a hostile work environment on the basis of his age and disability, which led to his constructive discharge.[10]

The VA stated that to create an inference of constructive discharge, Mr. Castle had to show that "he belong[ed] to one or more protected groups" and "that his performance [met] management's reasonable expectations."[11] The VA first found that Mr. Castle was a member of a protected group due to his age and disabilities.[12] For the second prong, the VA cited a supervisor's report, which stated that Mr. Castle "displayed unprofessional conduct that led to disciplinary action,"[13] and that the SLC VA had "articulated legitimate, non-discriminatory reasons for its decision to propose his termination."[14] The VA concluded that because Mr. Castle had not met the SLC VA's reasonable expectations, his claim for constructive discharge failed.[15]

---

[6] *Id.* at 8–13.
[7] Thomas Castle Aff. 16, ECF No. 16-2, filed Mar. 24, 2022. Mr. Castle's chief complaints were headaches, migraines, and tinnitus, but he also experienced dizziness, anxiety, depression, gastric/intestinal distress, abdominal cramps, and chronic pain. Opposition 4–5.
[8] Opposition 15–17.
[9] Final Agency Decision, ECF No. 3-1, filed Apr. 15, 2020.
[10] *Id.* at 1.
[11] *Id.* at 5.
[12] *Id.*
[13] *Id.* (quoting Stephen Sagers Aff. 11, ECF No. 16-4, filed Mar. 24, 2022).
[14] *Id.*
[15] *Id.* at 6.

Mr. Castle then filed his Complaint against the VA on April 15, 2020.[16] The VA moved for summary judgment on March 24, 2022.[17] The matter is fully briefed.[18]

## STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[20] The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[21] When viewing the record, the court "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[22]

## UNDISPUTED MATERIAL FACTS[23]

1.   Mr. Castle was a respiratory therapist at the SLC VA from November 1, 2004 to September 15, 2018.[24] He was 61 when he retired on September 15, 2018.[25]

**Accommodations**

2.   In May 2013 and at other unspecified times, Mr. Castle told his supervisors that he experienced migraine headaches and tinnitus.[26]

---

[16] ECF No. 3.

[17] ECF No. 16.

[18] ECF No. 26; Reply Brief, ECF No. 31, filed July 21, 2022.

[19] Fed. R. Civ. P. 56(a).

[20] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1169 (10th Cir. 2021) (citation omitted).

[21] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[22] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).

[23] The fact record regarding Mr. Castle's discrimination and hostile work environment allegations is not well-developed. Dates, specifics, and supporting information are often in short supply.

[24] Opposition 2; Castle Aff. 8.

[25] *See* Opposition 4.

[26] *Id.* at 6–8; Castle Aff. 4; Pl. Resps. to Def. First Set of Interrogs. 11–12, ECF No. 16-7, filed Mar. 24, 2022.

3.   At unspecified times, Mr. Castle made informal requests for accommodation for his sensitivity to light and noise.[27]

4.   In June 2014, Mr. Castle requested accommodation for his headaches and was told by supervisors that he could use empty offices.[28]

5.   In November 2016, Mr. Castle requested similar accommodations and his supervisor gave him permission to sit in quieter rooms with dimmable lights.[29] Mr. Castle also had an agreement with his supervisor that because of migraines, he could go into dark rooms and put his head down on a desk with his eyes closed, and even go home.[30]

6.   When he was transferred to the sleep clinic in May 2018,[31] Mr. Castle's supervisor gave him a workstation in a less-busy area of the clinic with dimmable lighting.[32] The supervisor also referred Mr. Castle to the SLC VA human resources department (HR) to make a formal request for accommodation.[33]

7.   In July 2018, Mr. Castle submitted a formal accommodation request, asking for dimmable lighting, less noise, and a reduction in time facing a computer and phone.[34] On September 14, 2018, Mr. Castle withdrew his formal request for accommodation,[35] and the SLC VA administratively closed the request the next day.[36]

---

[27] *See* Opposition 6–7.
[28] Castle Aff. 11.
[29] Opposition 5; ECF No. 16-7 at 10.
[30] Opposition 5–6; ECF No. 16-7 at 24.
[31] Opposition 12; ECF No. 16-7 at 25.
[32] Opposition 7; Mem. from Manager, Respiratory Care Servs., ECF No. 16-3, filed Mar. 24, 2022.
[33] Opposition 7.
[34] *Id.* at 7–8.
[35] *Id.* at 8.
[36] *Id.*

**Coworker Interactions**

8.  Mr. Castle made informal requests at unspecified times and places for supervisors to address a coworker's loud outbursts.[37]

9.  Management agreed to talk to a coworker in November 2017 and at other unspecified times about being quieter,[38] and "Shh" signs were posted around the department.[39]

10. At unspecified times and places, Mr. Castle's supervisors and unnamed coworkers referred to him as: "old man"; "old fart"; "Grampa"; "old dog"; "Senior"; and "elderly."[40] One coworker referred to Mr. Castle as "old white man."[41] Mr. Castle was also asked at unspecified times: "When are you going to retire?"; Aren't you going to retire?"; and "Hey old man, are you going to retire this year, you have enough seniority, right?"[42]

11. Mr. Castle referred to himself as "Senior Therapist" in a May 15, 2018 email.[43]

**Disciplinary Actions**

12. In September 2014, Mr. Castle was ordered to mediation to resolve tension with a coworker.[44] Management also entered an official memorandum stating that Mr. Castle could receive formal discipline if he failed to extend professional courtesy to his coworkers.[45]

13. In December 2015, management questioned Mr. Castle about an allegation of unwanted touching against a coworker.[46] The incident was substantiated.[47]

---

[37] *Id.* at 9; Castle Aff. 9.
[38] Castle Aff. 10; ECF No. 16-7 at 12.
[39] ECF No. 16-7 at 37; *see* ECF No. 26-6 ("Shh" sign).
[40] ECF No. 16-7 at 2; Castle Aff. 11.
[41] Complainant's Resp. to Agency's Interrogs., at interrog. 1, ECF No. 26-6, filed June 23, 2022.
[42] ECF No. 16-7 at 2; Castle Aff. 20.
[43] Email from Thomas Castle to Stephen Sagers, ECF No. 26-1, filed June 23, 2022.
[44] Opposition 9.
[45] Mem. from Stephen Sagers, ECF No. 16-12, filed Mar. 24, 2022.
[46] Opposition 9–10.
[47] Mem. from Lonnie Martinez, ECF No. 16-13, filed Mar. 24, 2022.

14. In August 2017, VA police filed a disruptive behavior report against Mr. Castle.[48] After, management gave Mr. Castle verbal counseling.[49]

15. In October 2017, Mr. Castle verbally abused a coworker over the phone.[50]

16. In November 2017, while in a breakroom and in front of witnesses, Mr. Castle saw a photo of his coworker's daughter and said that the daughter was "getting to a rape-able age."[51]

17. On May 7, 2018, Mr. Castle was suspended for one day, effective May 16, 2018.[52]

**Reassignment to the Sleep Clinic**

18. On May 15, 2018, Mr. Castle sent an email to his supervisor that stated in part, "I do not envy you, and warn that you (all) will rue the day you supported [my coworker]'s *purgerizing*, (**yes** I can make up words too, just like *rapeable*)!"[53]

19. Shortly after the May 15th email, Mr. Castle was reassigned to the sleep clinic.[54]

20. On May 21, 2018, Mr. Castle received a no-contact order for a coworker.[55]

**Last Chance Agreement**

21. On June 13, 2018, the SLC VA Chief of Medicine notified Mr. Castle that the SLC VA would issue him a notice of proposed removal for "conduct unbecoming."[56]

---

[48] Opposition 10.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 10–11.
[52] ECF No. 16-7 at 15; ECF No. 26-1.
[53] Opposition 10–11.
[54] *Id.* at 12.
[55] *Id.* at 3–4.
[56] *Id.* at 13.

22. On July 7, 2018, management and Mr. Castle agreed to enter a "Last Chance Agreement"[57] where Mr. Castle would serve a 14-day suspension but remain on active duty.[58]

23. Management approved Family and Medical Leave Act (FMLA) leave for Mr. Castle from July 9, 2018, to August 26, 2018, based on a complaint for migraines.[59]

24. Mr. Castle served the 14-day suspension starting on September 2, 2018.[60]

**Retirement**

25. Mr. Castle had planned to retire in December 2018, but he had his retirement paperwork ready by August 2018 "in case [management] decided to fire [him] [after he sent the email] . . . [and h]ad there not been an offer of 14-day suspension."[61]

26. Mr. Castle asked his supervisor if he could remain on extended unpaid leave after the 14-day suspension.[62] The supervisor told Mr. Castle that he had used up all of his FMLA leave, annual leave, and sick leave, and that leave without pay was not feasible because there were staffing shortages in the Respiratory Therapy department.[63] Further, the supervisor said that if Mr. Castle failed to return to work, he would be considered Absent Without Leave (AWOL).[64] Last, the supervisor informed Mr. Castle that he had three options: to return to work after getting

---

[57] While the "Last Chance Agreement" allowed Mr. Castle to remain on active duty, he was subject to immediate removal if there was future misconduct or unsatisfactory performance. *See* Alternative Discipline Agreement, ECF No. 16-19, filed Mar. 24, 2022.
[58] Opposition 13.
[59] *Id.*
[60] *Id.*
[61] *Id.* at 14 (first and third alterations in original).
[62] *Id.* at 14–15.
[63] *Id.* at 17. In his answers to interrogatories, Mr. Castle states without support that there were "plenty of agency and PRN [temporary] staff to cover, as that is what had been occurring." ECF No. 16-7 at 7.
[64] Opposition 15.

cleared by Employee Health, to discuss with HR other available options, or to speak with HR about specific accommodations.[65]

27. Mr. Castle did not return to work, seek other options, or ask for more specific accommodations.[66] He retired on September 15, 2018.[67]

## DISCUSSION

Mr. Castle claims that he was constructively discharged because the SLC VA discriminated against him in two ways. He contends that the SLC VA failed to accommodate his disabilities and that the SLC VA allowed a hostile environment to develop when supervisors and coworkers made purportedly ageist comments. To prevail on either claim, Mr. Castle must show that he was constructively discharged. "Constructive discharge occurs when an 'employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'"[68] Plaintiffs have a substantial burden in showing constructive discharge.[69] To make a prima facia case, "a plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign."[70] Second, the plaintiff must show that he resigned.[71] A plaintiff's "own subjective view is not sufficient; he must show that conditions were objectively unbearable, meaning any reasonable person in his position would have quit."[72]

---

[65] *Id.* at 15–16.
[66] *Id.* at 16.
[67] *Id.* at 17.
[68] *Newland v. Stevinson Toyota E., Inc.*, 505 F. Supp. 2d 689, 698 (D. Colo. 2007) (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986)).
[69] *Lockheed Martin Corp. v. Admin. Rev. Bd.*, 717 F.3d 1121, 1133 (10th Cir. 2013).
[70] *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)); *see also Brown v. Austin*, 13 F.4th 1079, 1093 (10th Cir. 2021) (Rehabilitation Act); *Martinez v. Sw. Cheese Co., LLC*, 618 F. App'x 349, 354 (10th Cir. 2015) (ADEA).
[71] *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 761 (10th Cir. 2020).
[72] *Brown*, 13 F.4th at 1093.

"If an employee resigns of h[is] own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."[73]

It is undisputed that Mr. Castle resigned.[74] The question is whether the SLC VA discriminated against Mr. Castle by (a) failing to accommodate his disabilities or (b) by creating a hostile environment so that a reasonable person in Mr. Castle's position would have felt that they had no choice but to quit.

### A.  The SLC VA Gave Mr. Castle Reasonable Accommodations.

Mr. Castle first argues that the SLC VA failed to accommodate his disabilities. To make a prima facie case of failure to accommodate, a plaintiff must first show that he "(1) is disabled; (2) is otherwise qualified; and (3) requested a plausibly reasonable accommodation."[75] The parties do not dispute that Mr. Castle complained of headaches and migraines and asked for accommodations.[76] The issue is whether the SLC VA timely responded to all reasonable requests. Mr. Castle argues that the SLC VA did not do so because they did not timely satisfy his requests for dimmer and quieter workspaces and they did not allow him to take unpaid leave.

First, Mr. Castle claims that the SLC VA did not give him timely and reasonable accommodations for his requests for quieter and dimmer workspaces. Mr. Castle declares that even though he told his supervisors that excessive light and noise bothered him, the SLC VA failed to provide accommodations, particularly by refusing to control his coworker's "loud and boisterous behavior."[77] The undisputed facts show that the SLC VA responded timely to Mr.

---

[73] *Rivero*, 950 F.3d at 761 (quoting *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005)).
[74] Opposition 17.
[75] *Brown*, 13 F.4th at 1084–85 (cleaned up).
[76] Opposition 5.
[77] *Id.* at 20.

Castle's reasonable requests. Mr. Castle summarily declares that he made pre-2014 requests to reduce the noise level,[78] but he provides insufficient information supporting his conclusory claim. On the other hand, the record reflects that as early as June 2014, Mr. Castle's supervisors let him use spaces that were less noisy.[79] In November 2016, Mr. Castle made an informal accommodation request and the supervisor gave him permission to sit in quieter rooms with dimmable lighting.[80] There was also a standing agreement that Mr. Castle could leave the shared workspace if it was too noisy and go to dark rooms to lay his head down and close his eyes, or even go home, if he felt the onset of migraines.[81]

Additionally, at least one supervisor spoke to Mr. Castle's coworker about excessive noise in November 2017, the department erected "Shh" signs,[82] and supervisors let Mr. Castle move to quieter areas with dimmable lights.[83] While at the sleep clinic starting in May 2018, Mr. Castle was even given a workstation in a less-busy area with dimmable lighting.[84] As to the July 2018 formal request for dimmable lighting, a lower noise level, and less time in front of a computer and phone,[85] Mr. Castle never returned to work after submitting the request.[86] Finally, other than a general reduction in noise and allowing him to work in quieter areas, Mr. Castle does not describe other reasonable actions that management should have taken.[87]

---

[78] ECF No. 26-6 at interrog. 2.
[79] ECF No. 16-7 at interrog. 10.
[80] Opposition 5–6.
[81] *Id.*
[82] ECF No. 26-6 at 63.
[83] Opposition 5–7; *see* ECF No. 16-7 at 10–12.
[84] Opposition 7.
[85] *Id.* at 7–8.
[86] *Id.* at 8.
[87] For example, while Mr. Castle asserts that the SLC VA should have better controlled his coworker, he does not explain what management should have done. *Id.* at 6. In any event, no reasonable jury would find that the SLC VA's actions were unreasonable.

Second, Mr. Castle claims that the SLC VA did not fulfill his request to remain on unpaid medical leave. As his supervisor explained, Mr. Castle had used all of his leave.[88] The supervisor said that the department would be short-staffed if Mr. Castle was allowed to stay home and therefore Mr. Castle would be charged AWOL if he did not return.[89] In fact, the SLC VA may have given Mr. Castle accommodations in connection with returning to work—the supervisor said that he could explore other options or seek specific accommodations with HR before returning.[90] Yet Mr. Castle never called HR or tried to return to work.[91]

For an accommodation to stay on unpaid leave, Mr. Castle would have had to be a "qualified individual."[92] A "qualified individual" is one who "satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position."[93] Here, Mr. Castle could not have been a "qualified individual" because his job required someone to be at the SLC VA treating patients.[94] The court will not give weight to Mr. Castle's unsubstantiated claim that there were enough workers to cover for his absence.[95] Neither will the court speculatively second-guess the SLC VA's personnel decisions.[96] For these reasons, the evidence would not allow a reasonable jury to

---

[88] *Id.* at 14–15.
[89] *Id.*; Sagers Aff. 10.
[90] Opposition 15–16.
[91] *Id.* at 16.
[92] *See Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1162 (10th Cir. 2014).
[93] 29 C.F.R. § 1630.2(m).
[94] *See Hwang*, 753 F.3d at 1181–82 (accommodations are "all about enabling employees to work, not to not work").
[95] *See* ECF No. 26 at 17; *Serna*, 455 F.3d at 1151.
[96] *See Adair v. City of Muskogee*, 823 F.3d 1297, 1308 (10th Cir. 2016) ("[I]t is not our job as a court to sit as a super personnel department that second guesses employers' business judgments." (cleaned up)).

conclude that the SLC VA failed to timely grant Mr. Castle's reasonable accommodation requests.

### B. The SLC VA Did Not Subject Mr. Castle to a Hostile Work Environment.

Mr. Castle next argues that his coworkers and supervisors' allegedly ageist comments created a hostile work environment that led to his constructive discharge. "An employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[97] In support, Mr. Castle points to comments made about his age that occurred in his last nine years at the SLC VA.[98]

It is not enough, however, for a plaintiff to show that he subjectively felt that the workplace was hostile. The plaintiff must show that the environment was "so intolerable that a *reasonable person* would have felt compelled to resign."[99] As noted above, a hostile environment must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[100] "[R]un-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a . . . hostile work environment claim."[101] Since Mr. Castle intertwines his hostile work environment claim with one for constructive discharge, he must meet an even higher standard. "Working conditions for

---

[97] *Hall v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 476 F.3d 847, 851 (10th Cir. 2007) (quoting *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).
[98] *See* ECF No. 16-7 at 2; ECF No. 26-1.
[99] *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012) (emphasis added).
[100] *Id.* at 957 (quoting *Morris v. City of Colorado Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012)).
[101] *Rolland v. Aurora Ret., LLC*, No. 20-cv-2338, 2022 WL 2802266, at *9 (D. Colo. June 1, 2022), *report and recommendation adopted*, 2022 WL 2802224 (D. Colo. July 6, 2022) (cleaned up).

constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case, an employee is expected to remain employed while seeking redress."[102]

Two Tenth Circuit cases are instructive. First, in *Hernandez v. Valley View Hospital Ass'n*, a plaintiff brought a discrimination claim against her employer for a hostile work environment leading to a constructive discharge.[103] The plaintiff asserted that during a fourteen-month period: "[supervisors] repeatedly subjected her to racially insensitive and offensive comments and jokes . . . . In addition, [her supervisor] accused her family member of being a murderer based on [her] surname, accused her family of not paying for lunch, and referred to a black cook using a racial epithet."[104] Further, the plaintiff "promptly and frequently complained to her supervisors about the offensiveness of the racial comments."[105] The Tenth Circuit found that the plaintiff had met her burden to show a hostile work environment.[106]

On the other hand, the Tenth Circuit did not find a hostile work environment in *Anthony v. City of Clinton*.[107] In *Anthony*, the plaintiff alleged that after he returned to work following a leave of absence for depression, his supervisor subjected him to "heightened supervision, unwarranted criticism of his work, and various incidents of 'verbal abuse.'"[108] The Tenth Circuit concluded that the incidents were not pervasive or severe enough because they happened over a short time period, none of the incidents seemed to be "physically threatening or humiliating,"

---

[102] *Zisumbo v. McCleodUSA Telecomms. Servs., Inc.*, 154 F. App'x 715, 729 (10th Cir. 2005) (quoting *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)).
[103] *Hernandez*, 684 F.3d at 953.
[104] *Id.* at 958.
[105] *Id.* at 953.
[106] *Id.* at 958.
[107] *Anthony v. City of Clinton*, No. 98-6188, 1999 WL 390927, at *4 (10th Cir. 1999) (unpublished).
[108] *Id.* at *1.

and while there was tension between the plaintiff and supervisor, mere "unpleasantries in the workplace d[id] not amount to a hostile work environment."[109]

Here, even if the comments directed at Mr. Castle were intended to belittle or ridicule him, it is unclear how often his coworkers or supervisors made them. Mr. Castle provides almost no information about the frequency or timing of these statements. Further, assuming for the sake of argument that the comments were made often, Mr. Castle offers little to show that a reasonable person would think that the speakers had discriminatory intent. In fact, in answer to the question, "Were there ever any inappropriate statements, comments, or slurs made about your age and disability," Mr. Castle declared in his affidavit supporting the EEOC claim: "Not necessarily."[110] And even if he was called a "Senior Therapist," Mr. Castle himself used that title in an email sent to supervisors.[111] Mr. Castle also claims that he started getting these comments at age 53.[112] But he never complained in nine years that the comments were offensive or that he found them objectionable.[113] On this record, waiting many years to respond to allegedly—but in Mr. Castle's own words "not necessarily"—offensive comments shows that the verbal jabs were not "so great [as] to force [a reasonable person] to quit."[114]

Overall, there is insufficient evidence for a factfinder to determine that the comments were pervasive or severe. They do not rise to the level of "physically threatening or humiliating,"

---

[109] *Id.* at *4 (citing *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998)).
[110] Castle Aff. 20. Mr. Castle did not paint a picture of a workplace where a reasonable person would have felt a hostile environment. In a response to an interrogatory, Mr. Castle stated that "staff and management would joke about me being 'old' because I was past the age of 50" yet "I was continually relied on as a resource of information." ECF No. 16-7 at 2.
[111] ECF No. 26-1.
[112] ECF No. 16-7 at 2.
[113] *See Herrara v. Lufkin Indus., Inc.*, 474 F.3d 675, 680–81 (10th Cir. 2007) (unheeded complaints are evidence that a person was offended).
[114] *Martinez*, 618 F. App'x at 354.

which would cause a reasonable person in Mr. Castle's place to resign.[115] At most, the comments may have caused some tension or discomfort. But a reasonable person would not have felt forced to resign due to the allegedly ageist remarks which apparently were occasionally made.

### C.  Mr. Castle Was Not Forced to Retire.

Mr. Castle makes one final argument in support of his constructive discharge claim. He contends that he had no realistic choice but to retire in September 2018. After he exhausted his leave, Mr. Castle requested leave without pay to take him to his planned retirement date of December 2018.[116] He claims, however, that his supervisor wrongly told him that his absence would cause undue hardship for his department, which then purportedly led Mr. Castle to consider one of three unacceptable choices: return to work and face a hostile work environment and lack of accommodations, stay home and risk termination, or retire.[117]

A claim of constructive discharge requires that "the court evaluate[] the voluntariness of an employee's resignation under an objective standard, considering the totality of the circumstances."[118] A plaintiff must show that "his employer did not allow him the opportunity to make a free choice regarding his employment relationship."[119] "[R]equiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is . . . involuntary."[120]

---

[115] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).
[116] Opposition 14–15.
[117] *See id.* at 15.
[118] *Kent v. Timec Co.*, No. 10-1329, 2012 WL 4476546, at *4 (D. Kan. Sept. 28, 2012).
[119] *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 768 (10th Cir. 2017) (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004)).
[120] *Exum*, 389 F.3d at 1135.

15

No reasonable jury could find that the SLC VA deprived Mr. Castle of a "free choice" about working or that his resignation was "involuntary."[121] There is no evidence that the SLC VA was planning on firing Mr. Castle. On the contrary, management decided to withdraw the proposed notice of removal in favor of the Last Chance Agreement, which allowed Mr. Castle to remain employed.[122] Mr. Castle argues that the agreement was "a way management c[ould] fire [him] without having to worry about providing . . . due process."[123] Yet Mr. Castle signed the agreement, which stated that the arrangement was "voluntary . . . without duress or coercion" and that he "fully underst[ood] all the terms of this Agreement and [wa]s aware of the right to consult an attorney."[124] Mr. Castle did not have any leave remaining after September because he had used up his FMLA leave, sick leave, and annual leave.[125] The supervisor told Mr. Castle that letting him take leave without pay would create undue hardship for the department and so if he did not return to work he would be AWOL.[126] Mr. Castle's unsupported argument in response— that the department had enough personnel—does not create a factual dispute.[127]

Though Mr. Castle faced discipline if he did not return to work,[128] his supervisor gave him options. He could have spoken with HR about "other options" or sought more specific accommodations before returning to work.[129] Yet Mr. Castle sought neither option; he chose instead to retire.[130] The supervisor also informed Mr. Castle that he needed to be cleared by

---

[121] *Sotunde v. Safeway, Inc.*, 716 F. App'x at 768; *Exum*, 389 F.3d at 1135.
[122] Opposition 13; *see* ECF No. 16-19.
[123] Opposition 21.
[124] ECF No. 16-19 at 2.
[125] Opposition 14.
[126] *Id.* at 14–15.
[127] *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (citation omitted)).
[128] Opposition 15 ("Absent Without Leave . . . could result in disciplinary action, up to and including removal.").
[129] *Id.* at 15–16.
[130] *Id.* at 17.

Employee Health before returning to work, so any health issues could have been addressed there.[131] In short, the SLC VA did not present him with a Hobson's choice.[132] Mr. Castle's decision to retire instead of seeking another resolution before returning to work was not a constructive discharge.[133] A reasonable person in Mr. Castle's position would not have felt that they had no realistic alternative but to resign.

In sum, the VA has met its burden to show that there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law.[134]

## ORDER

Accordingly, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

Signed August 31, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[131] *Id.* at 15–16.
[132] *See Anthony v. City of Clinton*, No. 98-6188, 1999 WL 390927, at *2, 7–8 (10th Cir. 1999) (unpublished) (finding that the plaintiff did not face a Hobson's choice between resigning and facing an internal investigation because there were valid reasons for the workplace investigating the plaintiff and the investigation's results were unclear); *cf. Dickson v. City of Albuquerque*, Civ. No. 01-192, 2002 WL 35650002, at *1–2 (D.N.M. May 28, 2002) (finding that the plaintiff faced a Hobson's choice between working for a supervisor previously suspended for workplace harassment and working at another facility that required a long commute).
[133] Opposition 16; *see Martinez*, 618 F. App'x at 355.
[134] *See Adler*, 144 F.3d at 670–71.

17